**Gary Dean OLSON, Petitioner,**

v.

**NORTH DAKOTA DISTRICT COURT, RICHLAND COUNTY, THIRD JUDICIAL DISTRICT, Respondent.**

Civ. No. 9548.

Supreme Court of North Dakota.

Oct. 31, 1978.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for petitioner; argued by John E. Rowell, Fargo.

Mervin D. Nordeng, Cass County State's Atty., Fargo, for respondent; argued by Joseph A. Turman, Asst. State's Atty.

SAND, Justice.

The defendant, Gary Dean Olson, charged with murder, and contending he has no adequate speedy remedy at law, petitioned this Court in an original proceeding for an appropriate supervisory writ directing the trial court to grant his motion for a change of venue from Wahpeton, Richland County, North Dakota, to Minot, Ward County, North Dakota.

Olson is charged with the murder of a West Fargo girl named Pollie Johnson. He filed a motion for a change of venue from the First Judicial District, Fargo, to the Fifth Judicial District, Minot, on the grounds there existed in the "First Judicial District of North Dakota so great a prejudice against the defendant that he cannot obtain a fair and impartial trial." Olson on the same day also filed a motion to allow him to hire, at State expense, a public opinion research expert for the purposes of lay-ing a further factual foundation in support of the motion for a change of venue should the trial court determine an insufficient foundation existed for that motion.

In support of his motion for a change of venue, Olson filed an affidavit of former District Court Judge Ralph B. Maxwell, along with affidavits from the news directors of KTHI, WDAY, and KXJB television stations, and the librarian from the Fargo Forum newspaper. Olson also filed scripts of broadcasts made by the three television stations along with copies of articles from the newspaper pertaining to Gary Dean Olson, the murder of Olson's wife, Dixie, and the murder of Pollie Johnson.

On 27 July 1978 Judge Robert L. Eckert of the Third Judicial District, Wahpeton, assigned to this case by the Supreme Court, denied the motion for a change of venue to Ward County and for a State-financed public opinion research expert. Judge Eckert, however, ordered a change of venue from Cass County, Fargo, to Richland County, Wahpeton.

On 15 August 1978, Olson filed a new motion for a change of venue from Richland County, Wahpeton, to Ward County, Minot, and again made a motion to hire, at State expense, an expert in the field of public opinion research to lay a further foundation for the change of venue motion should the court determine an insufficient foundation for the motion existed. In support of his second set of motions, Olson submitted affidavits showing the coverage area of the Fargo news media included Richland County. The second set of motions was denied on 30 August 1978. Olson then petitioned this Court for an appropriate writ directing the district court to grant a change of venue to Ward County, Minot.

Gary Dean Olson is currently serving a life sentence of imprisonment for the murder of his estranged wife Dixie Olson, found bludgeoned to death in her home in West Fargo on 24 January 1977. Prior to that date, on 8 August 1976, Pollie Johnson was found murdered in her family's home just north of West Fargo. She was shot twice in the head.

Public interest, sparked by the brutal nature of the crimes and the rarity of such crimes in the community, caused considerable news coverage to be given to each slaying. Pollie Johnson, the sixteen-year old daughter of a local Highway Patrol officer, was described as a popular girl, being a former West Fargo cheerleader, an outstanding gymnast, and a member of a number of school organizations. Following Pollie's death a number of persons were held and questioned in connection with the murder. At no time, however, was Gary Dean Olson's name mentioned as a possible suspect. A reward fund for any information leading to the arrest and conviction of Pollie's killer was established by a West Fargo service organization and two local banks. Although the reward fund reached a total of $6,500 the investigation continued to be fruitless.

On 24 January 1977 Gary Dean Olson's estranged wife, Dixie, was found beaten to death in bed. Local rumor (news item) suggested Dixie's murder might be linked with the earlier death of Pollie Johnson as law enforcement officials indicated after initial investigation of both cases that burglary appeared to be the motive behind the deaths. Gary Dean Olson was arrested on 23 March 1977 for the death of his wife, Dixie. Although some rumor of a possible connection between the two cases continued to exist in the community, the burglary theory in the Olson case was dismissed as simply a cover-up and law enforcement officials stated at the time of Olson's arrest that there was no evidence whatsoever to link the two cases.

Gary Dean Olson was found guilty by a jury of his wife's murder on 21 June 1977, and sentenced to a term of life imprisonment under the North Dakota special dangerous offender statute.

Later, on 16 December 1977, Gary Dean Olson was charged with the murder of Pollie Johnson. The complaint charging Olson with the murder of Pollie Johnson was supported by an affidavit of Earl Larson, Jr., the chief investigating officer in the Pollie Johnson murder case. The affidavit contained a summary of evidence gathered and statements taken that linked Olson with the Pollie Johnson homicide. This affidavit provided much of the information the news media used to cover Olson's arrest, and served as the basis for stories describing the theory of the murder as developed by law enforcement officials. Many of these articles discussed and compared the charges against Olson with his prior conviction of the murder of his wife, Dixie. Some of these articles also referred to the fact that he was found to be a dangerous special offender and sentenced accordingly for the murder of his wife.

Olson's petition invoking the jurisdiction of this Court basically rests upon § 86 of the North Dakota Constitution, as amended, which provides that the Supreme Court "shall have appellate jurisdiction, and shall also have original jurisdiction with authority to issue, hear, and determine such original and remedial writs as may be necessary to properly exercise its jurisdiction." Section 27–02–04, NDCC, in furtherance of the original jurisdiction, provides, in pertinent part:

"... in the exercise of its original jurisdiction, and in its superintending control over inferior courts, it may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction. ..."

The jurisdiction of this Court to exercise general superintending control over inferior courts can be distinguished from its appellate and original prerogative jurisdictions. *State ex rel. Jacobson v. District Court,* 68 N.D. 211, 277 N.W. 843 (1938). The superintending power allows this Court to control the course of litigation in district courts to prevent injustice in cases when there is no appeal, or when the remedy by appeal is inadequate. *State ex rel. Lemke v. District Court,* 49 N.D. 27, 186 N.W. 381 (1921). The power of this Court to issue supervisory writs is discretionary, however, and accordingly it will determine for itself in each case, not only if a particular case is within its jurisdiction, but also if it will exercise its discretion in granting

this extraordinary measure of relief. *State ex rel. Lyon v. Guy,* 107 N.W.2d 211 (N.D. 1961). Being a prerogative writ, the supervisory writ is to be used, like all prerogative writs, with caution and forbearance for the furtherance of justice, and to secure order and regularity in judicial proceedings when none of the ordinary remedies provided by law are adequate. *Zinn v. District Court,* 17 N.D. 128, 114 N.W. 475 (1908). Application for a supervisory writ will thus be denied in those instances where the petitioner failed to show that an action by the district court has resulted in a grave or serious prejudice to him for which he has no adequate remedy. *Ingall v. Bakken,* 167 N.W.2d 516 (N.D.1969).

Olson bases his justification for the petition in this case on the denial of his pretrial order for a change of venue which ordinarily is not reviewable except on appeal from a final judgment. *State v. Duffy,* 65 N.D. 671, 261 N.W. 661 (1935). Availability of appeal after final judgment often falls short of sufficient protection, however, as the burden, expense, and delay involved in a trial renders an appeal from a final judgment an inadequate remedy. *Maine v. Superior Court of Mendocino County,* 68 Cal.2d 375, 66 Cal.Rptr. 724, 438 P.2d 372 (1968). As the United States Supreme Court said in *Sheppard v. Maxwell,* 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966):

". . . reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception."

Thus we find there are instances when an appeal from a conviction is an inadequate remedy and the invocation of this Court's original jurisdiction is required to protect the defendant's fundamental right to a fair trial. In the interest of the petitioner and in the sound administration of justice where substantial probability and likelihood of pretrial prejudicial publicity exists, it is preferable to consider and determine the change of venue and make whatever corrections are necessary rather than wait until after trial when the likelihood of reversal and new trial will produce added expense and effort to both the State and the defendant. See *State v. Thompson,* 266 Minn. 385, 123 N.W.2d 378 (1963). We are not disregarding that additional evidence generally is available through voir dire.[1]

In the absence of the existence of extensive and prejudicial pretrial publicity so that prejudice to the defendant is probable, the usual practice is for the trial court to defer final ruling on a motion for change of venue until or upon completion of the voir dire examination. See Explanatory Notes, Rule 21 NDRCrimP. We do not depart from the traditional concept that generally the existence of prejudice can be adequately determined by voir dire examination of potential jurors and by examination of affidavits pertaining to the quantity and effect of publicity. We agree, however, with the California Supreme Court in *Maine v. Superior Court of Mendocino County, supra,* where they held that in certain instances the determination on the motion is properly made before voir dire. We find the following quoted language from that opinion particularly relevant:

"Experience shows, however, that trial courts are often reluctant to order a venue change after a jury has been empaneled. Defense counsel, moreover, is placed in an unnecessarily awkward position: unless he exhausts all his peremptory challenges he cannot claim on appeal, in the absence of a specific showing of prejudice, that the jury was not impar-

---

1. The Supreme Court in *State v. Shawan,* 77 N.M. 354, 423 P.2d 39 (1967) and the appellate court in *Corona v. Superior Court for County of Setter,* 24 Cal.App.3d 872, 101 Cal.Rptr. 411 (Ct.App.3d Dist.Cal.1972), implied that voir dire may be inadequate on the basis that some jurors allegedly are reluctant to admit bias or prejudice. If this is a valid assumption, our jury system may have problems. Nevertheless, we believe that the determination of prejudice and bias is a function and responsibility of the trier of facts having the opportunity to observe the demeanor of the jurors. We cannot comment on jurors in other states, but until reliable evidence is presented to the contrary we will continue to believe that the jurors in our state have high regard and respect for the truth and the oath.

tial. Yet, convinced that he must go to trial because his motion for venue change was at first denied and in all likelihood will not ultimately prevail, he may fail to use every peremptory challenge sensing that the jurors he has examined may be comparatively less biased than others who might be seated were his peremptory challenges exhausted. [Citations omitted.] In an antagonistic atmosphere 'there will remain the problem of obtaining accurate answers on *voir dire* —is the juror consciously or subconsciously harboring prejudice against the accused resulting from widespread news coverage in the community.' We can only conclude that the naked right to renew the motion for change of venue is not an adequate remedy at law to require a denial of a mandamus petition."

That opinion further goes on to say:

"Due regard for the orderly progress of a trial dictates that the defendant apply for a writ of mandamus in advance of trial so that, if the application appears meritorious, the appellate court pending its own decision can stay the trial court proceeding. If the appellate court denies the application or if appellate review is not sought, defense counsel can continue, as under the previous practice, to renew his motion for a change of venue during or after the voir dire examination of prospective jurors, and the trial court should order a venue change if the situation so merits."

Under the existing circumstances and upon the record before us we believe this is a proper case for this court to exercise its superintending jurisdiction.

We next consider the test involved in determining whether or not a supervisory writ compelling a change of venue should be issued.

In determining if a defendant has met his burden of proof under Rule 21(a), NDRCrimP, we adopt the test set forth in the American Bar Association, Project on Standards of Criminal Justice, Standards Relating to Fair Trial and Free Press (1966), and adopted by the California Supreme Court in *Maine v. Superior Court of Mendocino County, supra.* Section 3.2 entitled "Standards for Granting Motion" provides:

"A motion for change of venue or continuance shall be granted whenever it is determined that because of the dissemination of potentially prejudicial material, there is a reasonable likelihood that in the absence of such relief, a fair trial cannot be had. This determination may be based on such evidence as qualified public opinion surveys or opinion testimony offered by individuals, or on the court's own evaluation of the nature, frequency, and timing of the material involved. A showing of actual prejudice shall not be required."

Under the above tests it is not necessary that the ends of justice require the transfer, rather it is sufficient that they will be promoted. *State v. Thompson*, 266 Minn. 385, 123 N.W.2d 378 (1963).

We recognize that this court on previous occasions, as well as courts of other jurisdictions, have held the granting of a motion for a change of venue rests within the sound judicial discretion of the trial court and denial of such a motion is not error in the absence of a showing of an abuse of discretion prejudicial to the defendant. *State v. Phillips*, 68 N.D. 113, 277 N.W. 609 (1938); Wright, Federal Practice and Procedure, Criminal, § 347, p. 647 (1969). However, in an original proceeding for a change of venue our review standard is comparable for the model outlined by the United States Supreme Court in *Sheppard v. Maxwell, supra.* Under this standard we make an independent review of the record to determine if a reasonable likelihood of prejudice exists, giving appreciable weight to the trial court's findings of fact based on testimony of live witnesses. In this instance, where the trial court's determination was not based upon the testimony of live witnesses, but rather upon the same affidavits and exhibits before us on the record, our review, therefore, is in effect de novo. *Dolajak v. State Auto Casualty Underwriters*, 252 N.W.2d 180 (N.D.1977).

In applying the standards just set forth, we now make an independent evaluation of the record to determine if there is a reasonable likelihood that petitioner cannot receive a fair trial in the present forum (Richland County).

The explanatory notes of Rule 21, NDRCrimP, set forth four factors to be considered in a trial court's determination of reasonable likelihood of prejudice resulting from pretrial publicity. They are: (1) whether the publicity was recent, widespread, and highly damaging to defendant; (2) whether the prosecution was responsible for the objectionable material, or if it emanated from independent sources; (3) whether inconvenience to the prosecution and administration of justice will result from a change of venue or continuance; and (4) whether a substantially better panel can be sworn at another time or place. We also find relevant four additional factors developed by the California courts in determining if pretrial publicity has had a prejudicial effect as to justify a change of venue. Those factors are: (1) the nature and gravity of the offense; (2) the size of the community; (3) the status of the defendant in the community; and (4) popularity and prominence of the victim. *People v. Witt,* 53 Cal.App.3d 154, 125 Cal.Rptr. 653 (1976), *cert. denied* 425 U.S. 916, 96 S.Ct. 1518, 47 L.Ed.2d 768.

The affidavit of former North Dakota District Court Judge Ralph B. Maxwell is directed toward the second factor contained in the explanatory notes. In his affidavit Judge Maxwell said the affidavit filed with the criminal complaint in this case provided the media with information, the publication of which prejudiced the ability of Olson to obtain a fair trial. As mentioned previously, the State filed, along with the criminal complaint in this case, an affidavit by the chief investigating officer which set forth a summary of much of the evidence gathered by law enforcement personnel leading to the filing of the complaint against Olson. Petitioner states that some of the information contained in the affidavit is hearsay and would be inadmissible at trial. The net effect, he contends, is the prosecution was responsible for making available to the news media the information that has proven prejudicial to petitioner's right to receive a fair trial.

Rule 4, North Dakota Rules of Criminal Procedure, requires a magistrate to make a finding of probable cause before he issues an arrest warrant. The magistrate is to make his determination of probable cause based on information contained in the complaint, or in the affidavit filed with the complaint, or upon the sworn testimony of any witness adduced, provided such testimony is recorded. The rule specifically provides the evidence on which the probable cause determination is made may be hearsay in whole or in part.

In this case reportedly the State has not as of now uncovered any eyewitnesses to the murder of Pollie Johnson. Consequently, the State's case against Olson is dependent upon circumstantial evidence in the form of bits and pieces of information gathered by law enforcement officials connected to Olson by the testimony of live witnesses. The statements made by the chief investigating officer in his affidavit simply set forth a summary of information that has been gathered and the statements of live witnesses connecting the information to Olson. The affidavit contains no inflammatory remarks nor does it appear that the State issued any statements that were prejudicial to the petitioner other than the affidavit filed with the court. This court and the United States Supreme Court have stated on a number of occasions that to comply with the requirements of the Fourth Amendment the prosecution must set forth with a certain degree of specificity the basis for probable cause. It could well be argued that had the affidavit of the State contained less information than which it did, it might not have set forth a sufficient basis for a finding of probable cause. The State maintains the practice of filing an affidavit with the complaint is one that they follow in all major cases to insure that the correct procedure is followed and to avoid a possible reversal on appeal. We

find that such a practice alone in this case does not constitute a justifiable basis for a change of venue.

The widespread publicity received by the two murder cases is demonstrated by the number of articles carried by the Fargo Forum in connection with them. The Forum carried four accounts of the 24 January 1977 murder of Dixie Olson and the subsequent investigation. The Forum carried 28 news articles regarding the arrest, pretrial proceedings, the trial, and sentencing of Gary Dean Olson for the murder of his wife. Sixteen articles were printed by the Forum concerning Pollie Johnson's murder and the subsequent investigation. Eight of those articles covered the reward fund that was established for information leading to the arrest and conviction of Pollie's murderer. Eight articles were also published by the Forum concerning the charge brought against Olson for the death of Pollie Johnson. All eight of these latter articles discussed the charges pending against Olson in relation to his prior conviction for the murder of his wife and two of the articles referred to the fact that Olson was found to be a dangerous special offender during the sentencing proceeding in connection with his conviction for his wife's murder. In summary, approximately 56 articles were carried by the Fargo Forum over less than a two-year period concerning the two murders; one murder of which Olson was convicted, and one murder of which he is presently charged.

In addition to newspaper articles, the record contains scripts of television news stories on the two murders. Without undertaking a discussion of the quantity and content of these scripts, suffice it to say the contents of the television broadcasts were much the same as those of the newspaper articles.

■ We do not feel that pretrial publicity in this case was either inflammatory or exhibited overt hostility towards Olson, however a reasonable likelihood of unfairness can exist even absent these two factors. *Corona v. Superior Court for County of Setter*, 24 Cal.App.3d 872, 101 Cal.Rptr.

411 (1972). Nor do we find that the extensive news coverage given either of the two murder cases would alone justify granting Olson a new trial as juror exposure to news account of a crime with which defendant is charged does not alone presumptively deprive the defendant of a fair and impartial trial. *People v. Manson*, 61 Cal.App.3d 102, 186, 132 Cal.Rptr. 265 (1976), *cert. denied* 430 U.S. 986, 97 S.Ct. 1686, 52 L.Ed.2d 382.

■ In this case, however, as a result of pretrial publicity a strong nexus has been created between the two crimes involving Gary Dean Olson such as present a reasonable likelihood that Olson cannot get a fair and impartial trial in Cass County, Fargo. This strong nexus has been given appreciable weight in making our decision. When such a situation exists, the only effective remedy, if defendant so requests, is a change of venue. District Court Judge Eckert recognized this likelihood in his memorandum opinion when he ordered the trial transferred from Cass County, Fargo, to Richland County, Wahpeton. Judge Eckert recited that the relatively recent trial of Olson for the murder of his wife kept fresh the memory of the earlier death of Pollie Johnson and the active participation of the Fargo community in the Johnson murder investigation through the creation of a reward fund would complicate the jury selection process in Cass County. For these reasons he ordered the trial moved from Cass County to Richland County.

We agree with Judge Eckert's finding that a reasonable likelihood existed that Olson could not get a fair and impartial trial in Cass County, although we disagree with his decision to deny Olson's motion that the trial be moved to Ward County. In ordering the trial transferred to Richland County rather than Ward County, Judge Eckert stated a transfer to Ward County would result in a great inconvenience and expense to the State as over 60 witnesses were expected to testify in the State's case. Judge Eckert stated further that the publicity of the case would follow the trial and those citizens of Ward County who had not heard of the case would be

made aware of it shortly after it was transferred.

Venue in this case was ordered changed from Cass County, Fargo, to Richland County, Wahpeton, a distance of approximately 55 miles. The population of Richland County, according to the 1970 census, was approximately 18,200, or less than one-fourth of the population of Cass County. The assistant circulation manager of the Fargo Forum indicated in his affidavit that the newspaper has a circulation of over 2,000 in Richland County. Affidavits of the sales managers of the three Fargo television stations state the broadcast signals of each station reach and include all of Richland County. These affidavits demonstrate that the same news sources that provided the pretrial publicity that tainted the possibility of Olson receiving a fair trial in Cass County also provided news coverage to Richland County. There may be additional sources of news coverage, but they are not listed.

The State argues the changing of venue from Cass County to Richland County substantially reduced the possibility of any prejudice that might exist against Olson so as to prevent him from having a fair trial. It is the State's contention that the strongest factors that might prevent Olson from receiving a fair trial in Cass County is the fact the victim of the crime was a sixteen-year-old resident of the County. The outrage of the community, demonstrated in part by the reward fund, caused by the brutal murder of one of its citizens is, however, only one of the factors justifying a change of venue. While it is generally true that in counties geographically removed from the locale of the crime, lack of a sense of community involvement will permit jurors a degree of objectivity unobtainable in that locale, there are factors involved in this case other than possible hostility that operate to raise a reasonable likelihood that defendant cannot receive a fair trial in Cass County. Thus even if we conceded for the sake of argument that the change of venue to Richland County may eliminate local hostile outrage against Olson, the other factors still remain.

■ A jury verdict must be based upon evidence received in open court, not from outside sources. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). This is true regardless of the heinousness of the crime charged, the apparent guilt of the offender, or his station in life. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). We, as the court did in *Sheppard*, echo the sentiments of Justice Black in *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 924 (1955), that "our system of law has always endeavored to prevent even the probability of unfairness." Our trial courts must follow the direction set forth in *Sheppard*;

> "Due process requires that the accused receive a trial by an impartial jury free from all side influences. Given the persuasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused."

■ When, as in this case, there exists doubt as to the ability of a defendant to receive a fair and impartial trial in the community because of pretrial publicity, a motion for a change of venue should be granted to eliminate that doubt. A change of venue from one community to another that has received virtually the same pretrial publicity does not accomplish that objective. Rather, the venue change should be made to a community that has escaped as near as practical the influences of the pretrial publicity.

■ Certainly the notoriety of the two murders and Olson's involvement, or possible involvement, in each cannot be expected to be limited to the confines of the Fargo community. Nor can a person who has been convicted for the murder of his spouse and is subsequently charged with another murder expect anonymity. Such cases command statewide interest. Statewide notoriety, however, does not dismiss the trial court's duty to seek a forum in which a defendant can be given as fair and impartial a trial as practical. The court must do all that is reasonable to mitigate the effects

of prejudicial publicity. Although defendant's right to a fair trial does not demand that qualified jurors be totally ignorant of the facts and issues involved, it does require that consideration be given to locations where a substantially better panel can be obtained. *People v. Manson*, 132 Cal.Rptr. 265, 315 (1976).

The trial court, in changing the venue to Richland County, may have diminished the possibility of prejudiced jurors as a result of local hostility, however jurors would still be obtained from a community under the sphere of influence and possible prejudice generated by the concentrated pretrial publicity of the Fargo news media. We find the important consideration in this case is not so much the great amount of publicity received in the Dixie Olson-Pollie Johnson murders but rather the strong relation that has been made between the two through the connection of Gary Dean Olson. The fact that he has been found guilty of one highly publicized murder makes it too easy for potential jurors to presume his guilt of another. A change of venue to an area where the amount of publicity dedicated to either murder is reduced naturally lessens the connection between the two cases and Gary Dean Olson.

We also find it significant that the trial court changed the venue to a County less than one-half of the population of the County to which the venue change was requested. Reason dictates that the larger and more heterogeneous the community, the less that community is likely to be influenced by pretrial publicity from another area and the possibility of selecting an impartial jury is increased.

The state argues the position adopted by the trial court in its memorandum opinion, that the expenses involved in moving a trial to a distant location must be considered and balanced with any benefits that accrue to the defendant as a result of a change of venue. We agree that the increased expenses are a consideration that should and must be considered in denying or granting a change of venue. When the publicity is as great as it was in this case, however, and where a possible life sentence is involved, it is not requiring too much that defendant be tried in an atmosphere as free as practical from prejudice generated by pretrial publicity. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Although a change of venue may be an extraordinary remedy, these are extraordinary circumstances which justify its use. In this case the decision to transfer the trial a distance of 55 miles had already been made. Although substantial expenses will be incurred if the trial is moved to Ward County, Minot (a distance of 264 miles from Cass County, Fargo) these are offset to a great extent by the expenses which would have occurred had the trial been held in Richland County, Wahpeton. We do not believe the difference in the amount of expenses of holding a trial in the two locations justify denying the defendant the possibility of a substantially more fair and impartial trial.

The First Judicial District Court is ordered to vacate its order changing the venue of petitioner's trial from Cass County to Richland County, and further to grant petitioner's motion for a change of venue to a suitable facility in Ward County, Minot, North Dakota.

ERICKSTAD, C. J., VandeWALLE and PEDERSON, JJ., and GRAFF, District Judge, concur.