STATE of North Dakota, Plaintiff
and Appellee,

v.

Eugene ENGEL, Defendant
and Appellant.

Crim. Nos. 695–A, 695–B.

·Supreme Court of North Dakota.

Feb. 14, 1980.

John E. Jacobson, State's Atty., Stanton, for plaintiff and appellee.

Ralph A. Vinje, Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

The defendant appeals from two judgments of conviction entered on August 6, 1979, in the Mercer County Court of Increased Jurisdiction. We affirm.

The defendant, Eugene W. Engel, was convicted of the crimes of aggravated reckless driving and failure to stop at the scene of an accident involving personal injury, in violation of Sections 39–08–03 and 39–08–04, N.D.C.C., respectively. The alleged crimes arose out of an accident in the city of Stanton, North Dakota, on the afternoon of March 3, 1979, in which the pickup truck Engel was driving struck and seriously injured a four-year-old boy. Engel was sentenced to serve eight months at the North Dakota State Farm for each crime committed, with the sentences to run concurrently. Two months were credited for time served before trial.

A notice of appeal was filed on August 7, 1979, and Engel also made application to the trial court for release pending appeal. The trial court denied the application, and Engel applied to this court for release pending appeal and for release pending disposition of the motion made pursuant to Rule 9 of the North Dakota Rules of Appellate Procedure. This court remanded the matter to the trial court with instructions that Engel's motion for release pending appeal be granted, and that sufficient conditions, including limitation on the use of alcohol, be imposed to assure his presence within the jurisdiction should his conviction be affirmed on appeal. *State v. Engel*, 284 N.W.2d 303 (N.D.1979).

Engel raises several issues on appeal, namely:

(1) Whether or not the trial court abused its discretion in refusing to grant Engel's motion for a change of venue;

(2) Whether or not the admission into evidence of a photograph of the scene of the accident, marked by the witness through whom the photograph was sought to be introduced to indicate where the spinning of the tires of the pickup began, constituted prejudicial error; and

(3) Whether or not there was sufficient evidence to warrant a conviction of the crimes of aggravated reckless driving and failure to stop and render assistance in an accident involving personal injury.

We will analyze each of these issues to determine its validity.

■ The granting of a motion for a change of venue rests within the sound judicial discretion of the trial court. *State v. Jager*, 85 N.W.2d 240 (N.D.1957); *State v. Pusch*, 77 N.D. 860, 46 N.W.2d 508 (1951). The denial of such a motion is not error in the absence of a showing of an abuse of discretion prejudicial to the defendant. *State v. Phillips*, 68 N.D. 113, 277 N.W. 609 (1938).

Rule 21(a) of the North Dakota Rules of Criminal Procedure provides that the trial court, upon motion of the defendant, shall transfer the proceedings to another county or municipality if the court is satisfied there is so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in the county or municipality where the prosecution is pending.

The explanatory note to Rule 21, N.D.R. Crim.P., set forth four factors to be considered in a trial court's determination of whether or not to grant relief due to pretrial publicity likely to result in prejudice to the defendant: (1) whether or not the publicity was recent, widespread, and highly damaging to the defendant; (2) whether or not the prosecution was responsible for the objectionable material, or if it emanated from independent sources; (3) whether or not inconvenience to the prosecution and the administration of justice will result from a change of venue or continuance; and (4) whether or not a substantially better panel can be sworn at another time or place.

■ This court has also found that four additional factors are relevant in determining if pretrial publicity has had a prejudicial effect so as to justify a change of venue. These four other important factors for consideration are: (1) the nature and gravity of the offense; (2) the size of the community; (3) the status of the defendant in the community; and (4) the popularity and prominence of the victim. *Olson v. North Dakota Dist. Court, Etc.*, 271 N.W.2d 574, 580 (N.D.1978).

■ Generally, the existence of prejudice can be adequately determined during the voir dire examination of potential jurors and a careful examination of affidavits pertaining to the quantity and effect of publicity. As the explanatory note to Rule 21, N.D.R.Crim.P., suggests, the proper occasion for determining whether or not it is impossible to select a fair and impartial jury is during the voir dire examination. The trial court in the instant case deferred ruling on the motion for a change of venue until such time as the parties had selected a jury, after which the motion was denied.

■ Engel contends that because of his history of alcoholism and violent episodes

over a span of years in the county where the trial took place; the death of his wife a year-and-a-half prior to the trial; and his entanglement with a married woman in Stanton, he would be unable to obtain a fair and impartial trial in Mercer County. To support this contention, Engel relies on the recent case of *Olson v. North Dakota Dist. Court, Etc.*, *supra*. We believe that Engel's reliance on this case is misplaced.

*Olson* was an original proceeding brought to obtain an appropriate supervisory writ directing the trial court to grant the defendant's motion for a change of venue in a well-publicized murder case. Approximately 56 news articles regarding the arrest, pretrial proceedings, the trial, and sentencing of the defendant for the murder of his wife, and the second murder of a sixteen-year-old girl for which the defendant had been charged, were carried by the *Fargo Forum* over a span of less than two years. There had also been extensive television coverage of the two murders.

Unlike the widespread pretrial publicity in the *Olson* case, Engel presented absolutely no evidence of any recent pretrial publicity that may have possibly been prejudicial. The only mention of press coverage was by the State at a pretrial hearing on the motion for a change of venue and bond reduction. At that hearing, the State's Attorney made reference to the existence of one short news article printed in the *Beulah Beacon* and a similar column in the *Hazen Star*. The articles were printed approximately four months before the trial and pertained to the accident and Engel's subsequent arrest.

These articles were the only evidence of pretrial publicity presented to the trial court other than allegations by Engel's counsel of the defendant's undesirable and notorious reputation in the community, and of the unpopular gossip that he contended pervades the entire county. The judgment roll is devoid of any affidavits filed showing that the community was biased or that the jury was predisposed to finding against the defendant. *See State v. Lueder*, 242 N.W.2d 142 (N.D.1976); *State v. Jacob*, 222 N.W.2d 586 (N.D.1974).

■ Engel's counsel, however, stated during the oral arguments before this court that he had submitted his own affidavit in support of the motion for a change of venue. This affidavit allegedly contained the same assertions of prejudice and reasons Engel would be unable to obtain a fair and impartial trial in Mercer County, as previously discussed herein. An affidavit of the movant's attorney, however, is not ordinarily a sufficient basis for a change of venue. *Williamson v. Erickson*, 354 F.Supp. 1130, 1132 (S.D.S.D.1973). The allegations made by Engel's counsel are argumentative, conclusory, and unsupported by the record. Further, we recognize that in passing on a motion for a change of venue on the ground that the defendant cannot obtain a fair and impartial trial in the district, the ultimate question to be decided is whether or not it is impossible to select a fair and impartial jury. *See* Explanatory Note, Rule 21, N.D. R.Crim.P. A careful perusal of the record on the voir dire examination fails to reveal a showing of prejudice against Engel or a bias in the community. Instead, the record shows that five of the six jurors empaneled to hear the case had neither seen nor heard of the defendant.

We believe that Engel failed to meet his burden of proving a reasonable likelihood of prejudice so pervasive that a fair and impartial jury could not be found. Therefore, the trial court's denial of his motion for a change of venue was not an abuse of discretion.

The second issue Engel has raised on appeal is whether or not the admission into evidence of a photograph of the scene of the accident, marked by the witness who took the photograph to indicate where the spinning of the truck's tires began, constituted prejudicial error.

During the presentation of the State's case, Mercer County Sheriff Ronald Kessler was called to the stand. Kessler had been the investigating officer of the truck-pedestrian accident and had arrived at the scene shortly after the accident took place. He had observed Engel's pickup truck stuck in

a snowbank with a young boy pinned underneath the front end. As part of his investigation, Kessler took several photographs of the accident scene and of the intersection where Engel attempted to execute a U-turn.

Prior to the introduction of the photographs at trial, Kessler testified, without objection, that he had observed tire tracks made in a U-turn fashion and that approximately halfway through the turn the rear wheels had began to spin "throwing snow away and leaving a glare ice pattern all the way from halfway through the turn up until the stop."

At issue is one particular photograph which depicted Engel's pickup truck wedged in a snowbank and the tire tracks of the vehicle as it came to rest. The photograph, State's Exhibit No. 7, had been marked with a pen by Kessler during direct examination to indicate where the spinning of the tires began. The following colloquy between the State's Attorney and Kessler aids in understanding what the markings on the photograph were intended to mean:

"Q. (Mr. Jacobson continuing) Sheriff Kessler, I show you what's been marked as State's Exhibit 7 and ask you to identify that for us, please.

"A. This is another photograph of the vehicle that we have been discussing in its parked position. It shows the tire tracks of the vehicle as it came to rest.

"Q. Does it show where the skidding—the spinning began?

"A. It is there if you can recognize it. However, it was driven over several times prior to the photograph. But it is there if one looks closely, yes.

"Q. Could you take this pen and put an arrow on the spinning marks. I think it will write on there. Okay. You have drawn a dotted line on the tire tracks of the vehicle as you observed them at that time; is that correct?

"A. Yes.

"Q. Is this a true and correct representation of what you observed at that time?

"A. Yes, it is.

"MR. JACOBSON: We would offer State's Exhibit No. 7 into evidence."

Defense counsel objected to the introduction of this marked photograph on the grounds that the markings thereon were misleading and prejudicial, and that the jury could make their own determination as to what the photograph represented. This objection was overruled. The State then proceeded to have Kessler indicate a point on State's Exhibit No. 1 where he observed that the spinning marks began. State's Exhibit No. 1 was a drawing of the intersection where the accident occurred and a sketch of the path that Engel's pickup truck had taken prior to striking the young boy. Kessler indicated a point on the drawing where the spinning of the truck's tires began and further testified that the point was approximately halfway to two-thirds through the turn. State's Exhibit No. 1, and the testimony relative thereto, was offered and received into evidence without objection.

Generally, a patrolman or police officer not an eyewitness to an accident, who investigates the scene of the accident shortly after it happens, may properly testify as to his physical observations and findings at the scene. *Lynch v. Suthoff*, 220 So.2d 593 (Miss.1969); *See Hixson v. Barrow*, 135 Ga.App. 519, 218 S.E.2d 253 (1975); *McBroom v. Orner*, 64 Wash.2d 887, 395 P.2d 95, 11 A.L.R.3d 914 (1964). Testimony relating to physical observations and facts perceived by the witness, such as the location of vehicles, the condition of the roadway, and the existence of skid marks, are all proper subjects of testimony by the ordinary or lay witness. *See Hoffer v. Burd*, 78 N.D. 278, 49 N.W.2d 282 (N.D.1951); Rule 701, N.D.R.Ev. Testimony relating to purely physical facts requires no special qualification and does not come within the scope of expert opinion evidence. *See* Annot., 10 A.L.R.3d 258 (1966); 3 C. Torcia, Wharton's Criminal Evidence §§ 581–82 (1973).

In the instant case, the investigating officer, who arrived at the scene of the accident shortly after it happened, properly testified as to what he physically observed at the

scene, and this testimony was received without objection. Engel's objection, however, was directed towards certain markings on a photograph which indicated where the tires on Engel's pickup truck began spinning.

Photographs are generally admissible to establish or clarify evidence of physical facts and to aid the jury in arriving at an understanding· of the evidence. *Thornburg v. Perleberg*, 158 N.W.2d 188 (N.D.1968); *Dawson v. City of Lincoln*, 176 Neb. 311, 125 N.W.2d 908 (1964). To be admissible, the photograph must not be too remote in time nor must it give a wrong impression or create undue prejudice. A photograph must be a true and accurate representation of the relevant facts as observed by the witness at a time pertinent to the inquiry. *Twyford v. Weber*, 220 N.W.2d 919 (Iowa 1974); *Gleson v. Thompson*, 154 N.W.2d 780 (N.D.1967).

This court has held in the past that the use and admission of photographs in criminal trials is largely within the discretion of the trial court. *State v. Heasley*, 196 N.W.2d 896 (N.D.1972); *State v. Gill*, 154 N.W.2d 791 (N.D.1967).

"A relevant and properly verified photograph, however and whenever marked or written on and regardless of who marked or wrote on it, is nonetheless admissible in evidence provided (1) the marks or notations are pertinent expressions of fact devoid of evidential value when considered apart from the photograph, and provided (2) some witness explains the marks or notations and verifies their correctness." 3 C. Scott, Photographic Evidence § 1484 (2d ed. 1969); 29 Am.Jur.2d, *Evidence* § 784 (1967); 32 C.J.S. *Evidence* § 709 (1964); Annot., 108 A.L.R. 1415 (1937). *See Hamdorf v. Corrie*, 251 Iowa 896, 101 N.W.2d 836 (1960) (photographs of the scene of an automobile collision were not rendered inadmissible due to "X's" marking the point of impact, arrows showing directions, or broken lines indicating skid marks); *Sherlock v. Minneapolis, St. P. & S. S. M. Ry. Co.*, 24 N.D. 40, 138 N.W. 976 (1912).

The photograph objected to, State's Exhibit No. 7, and the markings thereon, were relevant to corroborate Kessler's previous testimony concerning the point in the U-turn executed by Engel where the tires of the pickup began to spin. It is as proper for a witness to demonstrate to the jury by marking on a photograph where the tires began to spin, as it is for a witness to indicate the same thing on a plat or diagram, or to describe it verbally. *Nolan v. Commonwealth*, 311 Ky. 852, 226 S.W.2d 27 (1950); 3 C. Scott, Photographic Evidence § 1484 (2d ed. 1969). Accordingly, if a photograph is properly admissible without markings, it is proper to permit a qualified witness to place marks thereon while he is testifying to indicate positions of objects, locations of injuries, or spots where certain events occurred. *Id.* Properly verified photographs are not rendered inadmissible because of marks on them if the individual who made the marks explains them or testifies as to what they represent. *State v. Lang*, 197 Neb. 47, 246 N.W.2d 608 (1976); 29 Am.Jur.2d, *Evidence* § 784 (1967). However, if the markings are drawn from hearsay testimony, the picture is properly excluded. *State v. Newman*, 179 Neb. 746, 140 N.W.2d 406 (1966).

It is generally preferable that ordinary photographs introduced in evidence bear no marks or notations. However, it is not an abuse of discretion for the trial court to admit a photograph that is marked if the marking is explained and verified. *State v. Bazinet*, 372 A.2d 1036 (Me.1977). Identifying marks placed on a photograph to call attention to some particular feature of the pictorial representation material to the case, which have been identified by a witness, are almost without exception held proper when they aid one looking at the photograph to understand what the witness is talking about. *Moore v. Crowe*, 117 Ga. App. 213, 160 S.E.2d 406 (1968).

The trial court in the instant case could have reasonably determined that the photograph taken by Kessler, and the markings he made thereon to indicate where the spinning of the tires began during Engel's at-

tempted execution of a U-turn, would give the jury a clearer picture of Kessler's testimony. The markings were properly explained and verified, and accordingly, we do not believe the trial court abused its discretion by admitting the photograph with the markings into evidence.

The third issue raised by Engel on appeal concerns the sufficiency of the evidence to warrant a conviction of the crimes of aggravated reckless driving and failure to stop and render assistance in an accident involving personal injury.

When the sufficiency of the evidence is challenged on appeal, we must view the evidence in a light most favorable to the verdict. *State v. Berger*, 285 N.W.2d 533 (N.D.1979); *State v. Larson*, 274 N.W.2d 884 (N.D.1979).

The evidence shows that on the afternoon of March 3, 1979, Mrs. Phyllis Thornton was pulling her four-year-old boy, Terry, on a red sled down a street on Stanton. The streets were snow-covered due to the previous night's snowfall. It is undisputed that Eugene Engel was driving his pickup truck that afternoon and that he had attempted to execute a U-turn at the intersection near his home in Stanton.

Mrs. Thornton testified that as she was walking down the street, she noticed a pickup pull out into the intersection as if to execute a U-turn. Mrs. Thornton stopped before getting to the corner of the street because she stated she was not sure what the driver of the pickup planned to do. She saw two people in the pickup and further testified that the driver (Engel) seemed to turn the wheel and accelerate. The pickup started towards Mrs. Thornton, and according to her testimony, she began waving her arms but the pickup continued towards her. She said the driver had both hands on the wheel; both of the people in the pickup were looking directly at her; and the tires were spinning. Her son was trying to climb up a snowbank when the pickup struck her in the shoulder and ran over the sled, pinning the young boy underneath the front end of the pickup and against the snowbank.

The evidence shows that Mrs. Thornton then ran over to the driver's side of the pickup and began pounding on the window and screaming for help. She testified that the driver (Engel) just sat and stared, saying nothing.

Elva Hendry, an eyewitness to the accident, gave a similar account of the accident. Mrs. Hendry testified that as the pickup was making the U-turn, it looked as if the vehicle was following the woman in the street (Mrs. Thornton). She stated that the pickup was always turning in the direction the woman went. Mrs. Hendry further testified that the woman screamed when it seemed the pickup was always moving towards her.

After the accident occurred, Engel testified that he went immediately to his house nearby and called the ambulance in Stanton. However, Barbara Hinkel, the ambulance dispatcher with the sheriff's department, testified that two calls were received the afternoon of March 3rd and that both calls were from women. She said no calls were received from a man.

The evidence also shows that the investigating officer, Sheriff Kessler, upon arriving at the scene, recognized that the pickup involved in the accident was Engel's. The officer went to Engel's house, which was near the scene of the accident, to look for him. Sheriff Kessler went to the door where he was met by Norma Jorgenson, the passenger in Engel's pickup at the time the accident occurred. Kessler demanded to see Engel, but Ms. Jorgenson told him that Engel would not come to the door without a warrant, nor would Kessler be allowed into the house without an arrest warrant. Engel was arrested several days later at the airport south of Mandan.

Although Engel testified that the accident was caused by his foot slipping off the brake and hitting the accelerator, and that he never saw the boy being pulled on the sled, we believe there was sufficient evidence presented to allow the jury to conclude to the contrary.

When the credibility of witnesses is at issue, a cold transcript is no substitute for hearing and observing witnesses as they testify. In criminal cases, this court has held that "at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction." *State v. Olmstead*, 246 N.W.2d 888, 890 (N.D.1976), *cert. denied* 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978), *citing State v. Kaloustian*, 212 N.W.2d 843, 845 (N.D.1973), and the cases cited therein; *State v. Neset*, 216 N.W.2d 285, 287 (N.D.1974).

After carefully reviewing the evidence in a light most favorable to the verdict, we believe there was sufficient evidence presented to allow the jury to conclude that Engel was guilty on both counts—aggravated reckless driving and failure to stop at the scene of an accident involving personal injury.

The judgments of conviction are affirmed.

SAND, VANDE WALLE, PEDERSON and PAULSON, JJ., concur.