**Karen SLAUBAUGH, Plaintiff and Appellee,**

v.

**Wilmer L. SLAUBAUGH, Wold Engineering, P.C., a North Dakota professional corporation, and Pierce County, North Dakota, Defendants and Appellants.**

**Civ. No. 920142.**

Supreme Court of North Dakota.

April 27, 1993.

---

McGee, Hankla, Backes & Wheeler, Minot, for defendant and appellant Wilmer L. Slaubaugh; argued by Donald L. Peterson.

Olson, Sturdevant and Burns, Minot, for defendant and appellant Wold Engineering; argued by Gary H. Lee.

Fleck, Mather & Strutz, Bismarck, and Charles D. Orvik, Asst. State's Atty., for defendant and appellant Pierce County; argued by Steven A. Storslee.

Lamont, Skowronek & Dobrovolny, Minot, and Zuger Law Offices, Bismarck, for plaintiff and appellee; argued by John Skowronek. Appearance by William P. Zuger.

SANDSTROM, Justice.

Wilmer Slaubaugh, Pierce County, and Wold Engineering appeal from the district court's order changing venue from Pierce County to Ramsey County. We affirm.

Karen Slaubaugh was seriously and permanently injured in a one-vehicle accident when she and her husband Wilmer drove through an unmarked "T" intersection in Pierce County (County), during the early morning hours of April 13, 1986. At the time, the County was improving various roads in the Rugby area. Wold Engineering (Wold) was the project engineer. Karen sued, alleging negligence against Wilmer as the driver of the vehicle, and against the County and Wold for failing to mark the intersection. Trial was held in Pierce County with a jury finding that Karen and Wilmer were the only negligent parties. The jury apportioned 40 percent of the fault to Karen and 60 percent to Wilmer. The jury found damages of $233,000 for past and future medical expenses, lost wages and future lost wages, and permanent disability. Karen was awarded nothing for pain, discomfort, and mental anguish. She appealed. We reversed and remanded for a new trial. *Slaubaugh v. Slaubaugh*, 466 N.W.2d 573 (N.D.1991).[1] We declined Karen's request to change venue from Pierce County on the basis that the district court was in a better position to make that decision. *Id.* at 583.

Karen's second jury trial in Pierce County was scheduled for March 23, 1992. Prior to voir dire, the district court ruled that evidence of marijuana and drug paraphernalia, found in Karen's possession at the scene of the accident, would not be admitted during trial. Consequently, the parties could not ask prospective jurors about the issue. Voir dire proceeded in chambers. After two days of voir dire, the district court expressed its concern about many of the prospective jurors:

"THE COURT: Counsel, for all of your benefit, my concern is a fairness of trial for all the parties here not just the Plaintiff not just the Defendants. But I have been keeping notes of some of the things that are going on in this voir dire examination and the cause and I know you haven't always agreed with whether you've excused them or not. But we have people who know the Plaintiff. We have people who are related. We have clients of the attorneys who have been discharged or I've dismissed 22 people because of this not just general principles. I'm not talking about principles of punitive damages against a county, against husband or wife. We're talking about 22; relatives, knowing people,

---

1. Wilmer and Karen were returning from a wedding dance held at the Knights of Columbus Club in Rugby when the accident occurred. Both had been drinking. Wilmer's blood-alcohol level was .21 at the time of the accident. In addition, police found marijuana in Wilmer's pants pocket. Marijuana and related drug paraphernalia were also discovered in Karen's purse. Blood and urine samples from Wilmer tested negative for marijuana. Karen was not tested. On appeal, we found the district court improperly allowed the defendants to overemphasize Karen's possession of marijuana, "resulting in a trial of her character rather than a trial of the merits," *Slaubaugh v. Slaubaugh*, 466 N.W.2d 573, 580 (N.D.1991). We also found that the jury's verdict was contrary to the evidence; the instructions given to the jury erroneously emphasized language favorable to the defendants; Karen's claim for punitive damages was erroneously dismissed; and, photographs of the intersection Karen sought to introduce were erroneously ruled inadmissible.

knowing things about the case. Already out of somewhere around 53—I think—50, we've had in here or maybe 49, I think one didn't show up, we have about half of them because of this case and there's still people in the 18 or 20 who have some knowledge. Then some of the people, they've said that won't affect them, but we wouldn't, don't have a pure 20 people who don't know anything. I think there's some concerns here for fairness to everyone. There's people who know commissioners. There's people who know Karen or people who know her parents. People who know Mr. Harmel, one of the witnesses. Now, the last one went out who knew the auditor and could not be in this but—

"MR. ZUGER: Well, the way I've looked at it—

"THE COURT:—We've got former employees of the County. Mr. Davidson worked for five and a half years for the County. We have a husband of one of your county employees, Mr. Orvik, Mr. Fritel. We have a bus driver who's been over that road. We have people who have been down that road. Some who know where the accident occurred. We've got a physical therapist in here who's worked on Karen. We've had just on and on and on and so I mean I've been through a lot of trials and a lot of cause, but I've never had this kind. I've had cause for farm, harvest time. I've had for some general ideas, but I've never had this many involved in all of the parties of our case for 50 people. So that's my concern right now."

With voir dire nearly complete, 30 out of 50 prospective jurors had been removed for cause by the court or litigants.[2] Karen then moved for a change in venue[3] claiming she could not get a sufficiently large award in Pierce County because the prospective jurors, as taxpayers, might be reluctant to grant punitive damages against the county. Karen also cited the inability to ask prospective jurors about marijuana and the apparent inner relationships among the prospective jurors, litigants, and witnesses as concerns:

"The other thing I think the Court noted that yesterday afternoon is these people. Everybody seems to know everybody. And it's certainly impossible to try to gauge how that's going to break out. We've had 48 jurors who have been

---

2. Under N.D.C.C. § 28-14-06, prospective jurors may be dismissed for cause on one or more of the following grounds:

"1. A want of any of the qualifications prescribed by law to render a person competent as a juror;
2. Consanguinity or affinity within the fourth degree to either party;
3. Standing in the relation of guardian and ward, master and servant, debtor and creditor, employer and employee, attorney and client, or principal and agent to either party, or being a member of the family of either party, or being a partner in business with either party, or surety on any bond or obligation for either party;
4. Having served as a juror or been a witness on a previous trial between the same parties for the same claim for relief;
5. Interest on the part of the juror in the event of the action, or in the main question involved in the action, except his interest as a member or citizen of a municipal corporation;
6. Having an unqualified opinion or belief as to the merits of the action founded upon knowledge of its material facts or some of them;

7. The existence of a state of mind in the juror evincing enmity against or bias for or against either party; or
8. That he does not understand the English language as used in the courts."

3. Under N.D.C.C. § 28-04-07, a court may change the place of trial when:

"1. When the county designated for that purpose in the complaint is not the proper county.
2. When there is reason to believe that an impartial trial cannot be had therein.
3. When the convenience of witnesses and the ends of justice would be promoted by the change.
4. When upon the call of the calendar at any regular or special term there appears to be an insufficient number of jury cases for trial to warrant the expense of a jury, the court, on application of any party to such an action, or on its own motion, taking into consideration the convenience of witnesses and the promotion of justice, may order the transfer of such jury cases as are on the calendar to any county within the judicial district where a jury session of court will be held in the immediate future, so that a prompt trial of such cases my be had."

examined and 28 excused for cause. Last time, we had a third of the panel gone. This time we've got more than 60 percent of the panel gone for cause. And these are just statutory cause and I know from listening to the Defendants here, talking they don't think four peremptories are enough to guard from potential prejudice. Certainly, my estimation is if the Court gave ten peremptories to each side, that they'd all get burned up."

The defendants argued that the motion was not timely, and that Karen had no basis to claim she could not receive a fair and impartial trial in Pierce County since she had passed for cause on the prospective jurors retained for trial. The district court granted Karen's motion and stated:

"Now, the issue of waiver raised by Mr. Storslee. It is true that the Plaintiffs have passed for cause on individual jurors, prospective jurors, and that is based on, I assume, their position that this was through statutory authority for such under 28–14–06 which sets out specific reasons for an individual juror. But in a motion to change venue for the idea of an impartial or fair jury panel, I think we're looking at more than individuals. We're looking at the cummulative [sic] effect of the whole body that you sort of end up with. It could occur through the individual inquiry of voir dire, but that is not an absolute that it's there or never."

The district court was especially concerned about relationships among the prospective jurors, the litigants, and witnesses:

"Let's just go through some of those who are still here, what they have said, not what they haven't said, what they've said. [Prospective juror 1].[4] Well, she knows [county commissioner] rather well. They share grandchildren together. She taught two generations of the Slaubaughs in school in Wolford. She said she could set those things aside. I'm not questioning that she cannot. Yet, just add this up and take a look at what we have.

"[Prospective juror 2]. My recollection she was very confused about a lot of the concepts in this case. And, in fact, it came out that her son had worked for Wold Engineering.

"[Prospective juror 3]. He's a former county employee. Former, so under our statute is not able to be excused.

"[Prospective juror 4]. She knew witnesses in the case. Said she could set them aside, but she knew witnesses.

"[Prospective juror 5]. He knew the Larsons, Karen's parents.

"[Prospective juror 6]. Now, these are people who are still on the panel. We got rid of many for all kinds of valid reasons. He not only knew [county commissioner], but his wife is a parttime employee for Mr. Orvik [co-attorney for the county]. He said he could set that aside, but it's still there.

"[Prospective juror 7]. There were mothers who were cousins. Karen's mother and someone else. It's not under the statute isn't cause, but it doesn't mean it isn't there.

"[Prospective juror 8]. He knew many of the witnesses. Perhaps none of them real well, but he lived in the community, so he knew them.

"[Prospective juror 9]. He knew some of the witnesses and he brought up a very key interesting thing which I think is another factor here. He was a member of the K.C. Club. They're not in this litigation, but people remember they were somehow involved in this at some point in time. It may not have been developed in voir dire. It probably isn't appropriate, but there's a factor there. And he right away—I remember his response well—if they're still involved in it, somehow he didn't think he could be on the jury. When I assured him they were not or counsel did, they he settled down a bit. But it's there. It was in the first litigation. It's in this community that the Knights of Columbus Club was sued as one of the Defendants.

4. Juror numbers are not those used by the district court.

"[Prospective juror 10]. He knew [witness]. They'd been co-workers at one time. He knows the roads and had been on a school bus road up in the Sand Lake area. And I think that is in the direction of which this accident occurred. That's out that way towards the Pleasant Lake way, but at least that was there.

"[Prospective juror 11]. She knew [Pierce County resident], who is from the firm of Mr. Orvik. She also knew some of the witnesses.

"That's over half of those who are still there, have this sort of what I call aura or this sort of feeling like this is a small inner-related community.

"Many of the people knew Mr. Orvik. And we have a rather unique situation in which Mr. Orvik is not only the attorney, but also is to testify. And it is at least one key element in the case. Now, taken singely, [sic] I don't think any one of those are a key matter, but when you start to look at that whole picture, I think we have some concerns.

"Again, that's not addressing those whom we have left out. We're not dealing with a city unit here in which we can bring people in from one end of the county or the other. I think that's quite easy. There are people who don't have any concern from one end to the other or city to city, but that's not what we're dealing with here. We have a county as a Defendant, a rural county. We have taxpayer concern. We have the punitive damages concern. We have a retrial. We have marijuana. We have a lot of discussion on the street about the case which in itself would not be adequate to address as pretrial publicity. And then all of these kinds of things that these people are very forthright have said they know some people and then this.

"It appears to me that when you look at all of those factors there is a real concern about the impartiality of a trial in this case. And I don't think it goes to the Plaintiff or the Defendants. It's just a mix of all of the parties in this case.

"Because the key is whether the parties can get a fair and impartial trial and having reviewed all of this, it appears to me in my discretion that it is impossible to impanel a fair and impartial jury panel in this case in Pierce County and I am going to grant the motion for change of venue."

The district court changed venue from Pierce to Ramsey County, stating a natural east-west boundary between the two counties would prevent the kind of connections present in Pierce County. A new trial was set for April 20, 1992. The district court subsequently certified its order to change venue as a final judgment under Rule 54(b), N.D.R.Civ.P.[5]

Wold, the County, and Wilmer appeal, arguing the district court: (1) lacked jurisdiction to change venue; (2) abused its discretion in changing venue; and, (3) abused its discretion in changing venue to Ramsey, rather than McHenry County. Karen contends we need not reach these issues because the district court improvidently certified its order to change venue as a final judgment under Rule 54(b), N.D.R.Civ.P.

■■■ "[A]n order granting a motion for a change of venue requires Rule 54(b) certification to invoke this court's appellate jurisdiction." *Jerry Harmon Motors Inc. v. First Nat. Bank and Trust Co.*, 436 N.W.2d 240, 241 (N.D.1989); *see also Nesvig v. Anderson Bros. Const. Co.*, 490 N.W.2d 478, 480 (N.D.1992). Under Rule 54(b), a district court may direct entry of an appealable and final judgment "as to one or more but fewer than all of the claims or parties 'only upon the express determination that there is not just reason for delay and upon an express direction for the entry of judgment.'" *Id.* Absent un-

---

5. Rule 54(b), N.D.R.Civ.P., provides in part:
"*Judgment upon multiple claims or involving multiple parties.* If more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or if multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon the express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

usual and compelling circumstances, the hope that immediate appellate review might avoid the chance of two trials is not a sufficient reason for granting Rule 54(b) certification. *Janavaras v. National Farmers Union Property*, 449 N.W.2d 578, 580 (N.D.1989). To demonstrate unusual and compelling circumstances, "there must be a showing of out-of-the-ordinary circumstances or cognizable, unusual hardships to the litigants that will arise if resolution of the issues on appeal is deferred." *Id.* The party requesting Rule 54 certification has the burden of demonstrating it will suffer hardship or unusual prejudice if certification is denied. *Union State Bank v. Woell*, 357 N.W.2d 234, 237 (N.D.1984).

The district court explains why its venue order should be appealable in its order granting certification:

> "[T]he court finds that refusal by this court to allow an appeal at this time would irreparably prejudice the defendants and require the defendants to participate in a trial in another county prior to a decision, on the merits, by the North Dakota Supreme Court of the change of venue order. Furthermore, the court finds that the change of venue order should be made appealable at this time to prevent a potential waste of resources and time of the court and the litigants. If the court's order for change of venue was not made appealable at this time, the earliest the order would become appealable would be after a trial in the new venue, Ramsey County. Should the order for change of venue be reversed after a trial in Ramsey County, the court and litigants would be required to conduct yet a third trial of this case in the venue found to be appropriate by the North Dakota Supreme Court."

■ We find that unusual and compelling circumstances exist which justify appellate review of this issue. The accident giving rise to this litigation occurred in 1986. The plaintiff has been seriously and permanently injured. One trial has been held and a second trial is pending. The issue of whether a change of venue is justified is before us a second time. As the district court notes, there is the possibility of yet a third trial, and another appeal where we would be faced with the issue of venue again. Our prior decision instructing the district court to consider the issue of venue on remand, combined with the possibility we may be required to review this question again, tips the balance in favor of appellate review. The district court did not abuse its discretion by certifying its order under Rule 54(b), N.D.R.Civ.P.

The defendants argue the district court lacked jurisdiction to change venue since Karen waived the right to make the motion when she passed for cause on enough prospective jurors to form a jury.[6]

■ The failure to challenge prospective jurors for cause during voir dire waives any objections to their selection as jurors. *Basin Elec. Power Co-op v. Miller*, 310 N.W.2d 715, 719 (N.D.1981). The failure to challenge a juror does not, however, waive the right to seek a change in venue. Challenges for cause under N.D.C.C. § 28–14–06 focus on the characteristics of individual jurors. Changing venue on the basis that a fair and impartial trial cannot be had demands a broader analysis. Additionally, the usual practice of a district court is to defer ruling on a motion to change venue until or upon the completion of voir dire. *Basin Elec. Power Co-op v. Boschker*, 289 N.W.2d 553, 559 (N.D.1980). A trial court should weigh the fact that a party has passed for cause on prospective jurors and look skeptically upon a motion when the movant's claims are not supported by voir dire testimony. However, a litigant's right to seek a change in venue is not waived and the court's statutory authority to grant the motion is not lost. Improperly granted motions in these cases should be challenged as

---

6. We are not convinced that the 20 retained jurors could have formed a jury at the time of Karen's motion. The record indicates that six to seven of the prospective jurors were still to be examined as to their knowledge of potential witnesses, and two of the retained jurors were likely to be excused due to scheduling problems. In addition, the district court had not made a ruling on how many peremptory strikes to grant the defendants.

an abuse of the trial court's discretion, not on jurisdictional grounds.

The defendants contend that the district court did indeed abuse its discretion by granting Karen's motion. They assert that, since 20 prospective jurors were approved by the parties, there was no basis to conclude a fair and impartial trial could not take place in Pierce County. In addition, they contend the district court's order was based on a belief that the prospective jurors were not telling the truth during voir dire.

A defendant has a statutory right to have an action tried in the county of his residence, "subject to the power of the court to change the place of trial as provided by statute." N.D.C.C. § 28–04–05. Venue may be changed when there is reason to believe that an impartial trial cannot be held in the county where the action is pending. N.D.C.C. § 28–04–07(2). The party seeking the change in venue has the burden to establish that an impartial trial cannot be held in the county from which the transfer is sought. *Jerry Harmon Motors, Inc. v. First National Bank and Trust Co.*, 440 N.W.2d 704, 708 (N.D.1989). Whether or not a change of venue is required to obtain a fair and impartial trial is a question of fact which "the presiding judge, having knowledge of all of the facts and circumstances of the case, is in a much better position to pass upon than is the appellate court." *Knoepfle v. Suko*, 114 N.W.2d 54, 56 (N.D.1962). The decision to grant or deny a motion for a change of venue is within the sound discretion of the trial court and will not be overturned on appeal unless an abuse of discretion is shown. *Haugo v. Haaland*, 349 N.W.2d 25, 27 (N.D.1984). A court abuses its discretion when it acts unreasonably, arbitrarily, or unconscionably. *Id.*

Implicit in the defendants' argument is that a trial court, when considering whether to change venue, may not look beyond the criteria set forth by N.D.C.C. § 28–14–06. We disagree. Juries, rather than individual jurors, decide cases, and jury decisions are not rendered in a vacuum. Consequently, determining whether a fair and impartial trial can be had in a particular location requires an analysis of the jury as a whole and of the community where the trial is to be held. This process allows a trial court to consider the aggregate effect of many factors. These factors may justify a change in venue even though they may be insufficient grounds to remove an individual juror for cause.

The district court's primary concern in changing venue was the relationships among the prospective jurors, litigants, and witnesses. While each juror may have been able to set aside any personal relationships, the district court could consider the cumulative effect of these connections. In addition, the district court could consider the cumulative effect of potential taxpayer interest. "[A]lthough jurors may not be subject to challenge for cause on the grounds of taxpayer interest, wise discretion might require a transfer of a case where it appears that every prospective juror will have a small interest as a taxpayer adverse to the moving party." *Haugo v. Haaland*, 349 N.W.2d at 28 (quoting *Sheridan County v. Davis*, 61 N.D. 744, 753, 240 N.W. 867, 871 (N.D. 1932)). A review of the voir dire transcript indicates as many as half of the prospective jurors knew something about the case, ranging from "scuttlebutt" to newspaper articles.[7] This condition was aggravated by counsels' inability to ask prospective jurors about their knowledge of, and attitudes towards, Karen's possession of marijuana and drug paraphernalia. In addition, many of the prospective jurors knew Charles Orvik, co-attorney for Pierce County. Familiarity with counsel standing alone is insignificant, but Orvik was also to

---

7. Standing alone, knowledge gained from "common gossip" does not automatically disqualify a juror. Likewise, a jury without any prior knowledge of the facts is not a requirement for fair and impartial jury. *State v. Olson*, 290 N.W.2d 664 (N.D.1980). Here, however, the trial court properly considered prior knowledge as one of several factors supporting the change in venue.

be a witness at trial.[8]

These factors, when viewed as a whole, provide a rational and reasonable basis to change venue. Our holding does not alter our firm belief that the jurors of North Dakota have a high regard for the truth, the oath, and our judicial system. *See Basin Elec. Power Co-op v. Boschker*, 289 N.W.2d at 559. While we understand the defendants' concerns, the sum of characteristics possessed by individual jurors may justify a change of venue, even though there are no grounds to remove any individual for cause. We find no abuse of discretion by the district court.

█ The defendants also contend the district court abused its discretion by changing venue before the entire venire panel had been examined.[9] While the usual practice is to defer ruling on a motion to change venue until or upon the completion of voir dire, we see no abuse of discretion. Fifty prospective jurors were examined and 30 dismissed for cause prior to the district court's ruling. Considering the persuasiveness of the inner relationships among jurors, litigants, and witnesses, the district court could properly conclude that further voir dire would not be helpful.

Finally, the defendants contend that the district court abused its discretion in changing venue to Ramsey County (Devils Lake) rather than to McHenry County (Towner). The defendants argue that the parties and witnesses will be inconvenienced since Devils Lake is over 60 miles away from Rugby (Pierce County). Towner, in contrast, is only 19 miles away. We disagree.

█ The transfer of venue is within the sound discretion of the district court. Generally, the convenience of the parties will not be considered by a trial court when changing venue. *Jerry Harmon Motors*, 440 N.W.2d at 711. "Courts may [also] consider the relative speed with which a trial may be had when determining venue

questions." *Stonewood Hotel v. Davis Development*, 447 N.W.2d 286, 289 (N.D. 1989). The district court changed venue to the more distant location hoping that Ramsey County jurors would be less likely to know the parties, witnesses, and facts of the case. Also, the Ramsey County courtroom was available. Considering the district court's concern about the relationships among those involved in the case, and the relatively short distance from Rugby to Devils Lake, we see no abuse of discretion. The order changing venue from Pierce to Ramsey County is affirmed.

VANDE WALLE, C.J., and MESCHKE and LEVINE, JJ., concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of NEUMANN, J., disqualified.

VERNON R. PEDERSON, Surrogate Judge, dissenting.

Because the precedent established by this decision could effectively terminate the trial of lawsuits in most of our rural counties, I am compelled to raise an objection. The exception in the statute which assures defendants that lawsuits against them will be tried in the county where they live, should not supersede the purpose of the statute.

I, first, am compelled to indicate my dissatisfaction with the strength and sufficiency of the articulated reasons given by the trial court for changing the venue. There are references to "concerns" and "feelings" relative to factors affecting potential fairness of individual jurors. Nevertheless, the court, without waiting until all potential jurors had been examined, concluded that "I don't think any one of those are a key matter, but when you start to look at that whole picture, I think we have some concerns." Subsequently, the court added "it appears to me in my discretion that it is impossible to impanel a fair and

---

**8.** Voir dire transcripts indicate that Karen was to call Orvik to testify about his actions as State's Attorney before the accident. At the first trial, Orvik testified that he told county officials, before the accident, that warning signs were needed at the "T" intersection.

**9.** The district court had assembled a venire panel of 100 prospective jurors.

impartial jury in this case in Pierce County and I am going to grant the motion for change of venue."

Most appellate courts have often confronted appellate review of matters "largely in the discretion of the trial court" and have said that that discretion is usually not "unbridled." It is not a simple procedure to appropriately review a trial court's subjective evaluations.

Even though we often state that a court abuses its discretion when it acts unreasonably, arbitrarily, or unconscionably, my Lexis research produced nearly a hundred cases which have commented on the propriety of the analogy in every subjective review, of the adage "beauty is in the eye of the beholder." That would soon make law out of every judge's idiosyncrasies. I still believe that the residents of Pierce County can get a fair trial, but maybe not a perfect trial, in Pierce County, as well as can those nonresidents who find it necessary to sue a resident of Pierce County.