STATE of North Dakota, Plaintiff
and Appellee,

v.

Kevin W. AUSTIN, Defendant
and Appellant.

Cr. No. 930261.

Supreme Court of North Dakota.

Aug. 24, 1994.

John P. Van Grinsven III (argued), Asst. State's Atty., Minot, for plaintiff and appellee.

Gary H. Lee (argued), Olson Burns Lee & Larson, Minot, for defendant and appellant.

LEVINE, Justice.

Kevin Austin appeals from a judgment of conviction entered upon a jury verdict finding him guilty of two counts of murder. We affirm.

On February 8, 1985, Charles and Cora Abernathy, an elderly couple, were murdered in their rural Ward County home. Both victims had been shot in the head and their throats were slashed. The home was ransacked and approximately $300 was stolen.

In September 1985, Calvin Newnam confessed that he and Austin had murdered the Abernathys. Austin was arrested and transferred from the State Penitentiary, where he was incarcerated for unrelated crimes, to Minot. Austin and Newnam were charged with robbery, felonious restraint, and two counts of murder.

Newnam was tried separately and convicted on all four counts in May 1986. *See State v. Newnam,* 409 N.W.2d 79 (N.D.1987). Newnam thereafter refused to testify against Austin. Without Newnam's testimony, the State dismissed without prejudice all charges against Austin in August 1986.

In 1991, Newnam agreed to cooperate with authorities and testify against Austin in exchange for the possibility of a reduction in his sentences. Through Newnam's assistance, officers recovered two .22 caliber handguns from the attic of Newnam's parents' home. Ballistics tests confirmed that these weapons had been used in the Abernathy killings. Evidence at trial also demonstrated that Austin had stolen these two weapons from a local residence in August 1984.

In an effort to secure additional evidence, law enforcement officers enlisted the aid of Werner Kunkel, an inmate at the State Penitentiary. Kunkel and Austin had met in 1985 while serving time in the penitentiary, and in 1992, Austin was married to Kunkel's exgirlfriend. Kunkel, wearing a recording device, met with Austin on three occasions during September, 1992, at Austin's workplace in Bismarck. Although Austin did not di-

rectly admit his involvement in the Abernathy killings, he did not deny his involvement when Kunkel repeatedly asked about it. The conversations were recorded and transcribed.

Austin was subsequently arrested and charged with two counts of murder. At Austin's jury trial, Newnam testified in detail about Austin's participation in the killings. The taped conversations with Kunkel were admitted into evidence. Austin testified, denying any involvement in the murders. The jury returned verdicts of guilty on both counts, and Austin received two consecutive life sentences.

On appeal, Austin raises the following issues:

(1) Did the trial court abuse its discretion in refusing to change venue?

(2) Did the trial court err in admitting into evidence the taped conversations?

(3) Did the trial court commit obvious error in instructing the jury that all witnesses are presumed to have told the truth?

(4) Was the evidence sufficient to sustain Austin's convictions?

## I. VENUE

Austin asserts that the trial court abused its discretion in denying his motions for change of venue made before and after voir dire of the jury panel. After considering the effect of pretrial publicity and hearing the panel members' answers on voir dire, the trial court concluded that a fair and impartial jury could be selected in Ward County. Austin asserts that the court should have granted his motions because there was excessive prejudicial pretrial publicity and because the voir dire demonstrated that the cumulative effect of the prospective jurors' prejudice against Austin made it impossible to seat an impartial jury.

Change of venue for prejudice is governed by Rule 21(a), N.D.R.Crim.P.:

"(a) For Prejudice in the County or Municipality. The court upon motion of the defendant shall transfer the proceeding as to that defendant to another county or municipality whether or not that county or municipality is specified in the defendant's motion if the court is satisfied that there exists in the county or municipality in which the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial."

We have identified eight factors to guide trial courts on motions for change of venue under Rule 21(a): (1) whether the publicity was recent, widespread, and highly damaging to the defendant; (2) whether the prosecution was responsible for dissemination of the objectionable material; (3) the extent of inconvenience to the prosecution; (4) whether a substantially better panel could be sworn elsewhere; (5) the nature and gravity of the offense; (6) the size of the community; (7) the defendant's status in the community; and (8) the popularity and prominence of the victim. State v. Purdy, 491 N.W.2d 402, 406–407 (N.D.1992); Olson v. North Dakota District Court, 271 N.W.2d 574, 580 (N.D. 1978). See also Rule 21, N.D.R.Crim.P., Explanatory Note.

A defendant seeking a change of venue under Rule 21(a) bears the burden of demonstrating a reasonable likelihood of prejudice so pervasive that a fair and impartial jury could not be found. State v. Engel, 289 N.W.2d 204, 207 (N.D.1980); Rule 21, N.D.R.Crim.P., Explanatory Note. The ultimate question for the court to decide is whether it is impossible to select a fair and impartial jury. State v. Engel, supra, 289 N.W.2d at 207; Rule 21, N.D.R.Crim.P., Explanatory Note. Although prejudice to the defendant may be so obvious that a change of venue should be ordered immediately, it is generally more appropriate to wait until voir dire to determine whether it is possible to select a fair and impartial jury. State v. Norman, 507 N.W.2d 522, 526 (N.D.1993); Rule 21, N.D.R.Crim.P., Explanatory Note. The motion for change of venue is addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal absent a showing of an abuse of discretion prejudicial to the defendant. State v. Norman, supra, 507 N.W.2d at 526; State v. Leidholm, 334 N.W.2d 811, 822 (N.D.1983).

Austin asserts that the extensive media coverage of the murders and the general

sense of panic and outrage in the community in 1985 and 1986 created such great public sentiment against him that a change of venue is required. Austin also stresses that the media frenzy at that time caused the trial court to change venue in Newnam's 1986 trial from Minot to Williston.

■ We have no doubt that media coverage of the heinous nature of these crimes and the seven-month delay before suspects were arrested created some degree of community anxiety in 1985. However, Austin's trial in June and July of 1993 took place more than eight years after the murders, and more than seven years after Newnam's 1986 trial. Austin presented no evidence documenting media coverage of the murders in the intervening years until Austin's rearrest in 1992, nor any evidence demonstrating continued community awareness or attitudes during those years. The voir dire responses of potential jurors who had lived in Minot in 1985–1986 generally showed that, although they remembered vague generalities about the murders and the media coverage, they did not recall specifics or harbor strong feelings about Austin's guilt or innocence. The trial court, having heard the potential jurors' responses on voir dire, was in a far better position to assess the effect of the original publicity upon Austin's 1993 trial, and the court concluded that the original publicity would not prevent the selection of a fair and impartial jury. We find no abuse of the court's discretion in that conclusion.

Austin also asserts that the media coverage, following his rearrest in 1992, was highly prejudicial and "deeply antagonistic." In support of his motion to change venue, Austin provided copies of twelve articles that ran in the Minot newspaper between September 1992 and February 1993.

We have previously commented upon the showing required to establish unfair prejudice from pretrial publicity:

"Publicity per se is not necessarily prejudicial or damaging to a criminal defendant. . . . Before a change of venue because of pretrial publicity is proper, it must be shown that the publicity was in fact prejudicial to the defendant. It is therefore not the quantity of media cover-

age which controls a change of venue motion, but rather the likelihood that any degree of adversity toward the defendant which was caused by that publicity will prevent him from receiving a fair trial.

"The record before us in the instant case did not support a conclusion that the television, radio, and newspaper reports at issue constituted prejudicial pretrial publicity against Houle. The testimony of the five media witnesses showed that the reports were all either factual accounts of the incidents which surrounded the alleged murder and the apprehension of the defendant, or statements of the various legal proceedings and their outcome in this case. Thus, the information in the challenged news reports was much the same as would be given any prospective juror when the criminal complaint was read and the opening argument of counsel made."

*Houle v. North Dakota District Court,* 293 N.W.2d 872, 874 (N.D.1980). *See also State v. Purdy, supra,* 491 N.W.2d at 407; *State v. Page,* 277 N.W.2d 112, 115 (N.D.1979). In this case, the twelve articles printed in the Minot newspaper over a six-month period were not inflammatory, sensationalistic, or biased, but generally reported factual accounts of the murders and of the ongoing criminal proceedings. The trial court reviewed them and concluded that they did not demonstrate unfair prejudice. We agree.

■ A defendant seeking a change of venue for prejudicial pretrial publicity and community bias bears the burden of demonstrating that prejudice and bias. *State v. Engel, supra,* 289 N.W.2d at 207; Rule 21(a), N.D.R.Crim.P., Explanatory Note. The defendant must present evidence such as "qualified public opinion surveys or opinion testimony offered by individuals," or must rely upon "the court's own evaluation of the nature, frequency, and timing of the material involved." *Olson v. North Dakota District Court, supra,* 271 N.W.2d at 579 (quoting ABA Standards Relating to Fair Trial and Free Press § 3.2(c) (1966)). Austin did not present qualified public opinion surveys or offer opinion testimony demonstrating community bias caused by the media coverage. Nor did Austin submit affidavits demonstrat-

ing community bias or a predisposition to find him guilty. *See State v. Engel, supra,* 289 N.W.2d at 207. The trial court evaluated the nature, frequency, and timing of the publicity in this case and concluded that the coverage was not so prejudicial as to preclude the selection of a fair and impartial jury in Minot. Our review of the record on appeal supports that conclusion.

Finally, Austin asserts that, in accordance with our holding in *Slaubaugh v. Slaubaugh,* 499 N.W.2d 99 (N.D.1993), venue should have been changed because the cumulative effect of the potential jurors' prior knowledge of the case created the impression that a fair and impartial trial could not be had. Austin emphasizes the following language from *Slaubaugh, supra,* 499 N.W.2d at 106:

> "Juries, rather than individual jurors, decide cases, and jury decisions are not rendered in a vacuum. Consequently, determining whether a fair and impartial trial can be had in a particular location requires an analysis of the jury as a whole and of the community where the trial is to be held. This process allows a trial court to consider the aggregate effect of many factors. These factors may justify a change in venue even though they may be insufficient grounds to remove an individual juror for cause."

*Slaubaugh* was a personal injury case in which Pierce County was a defendant. A first trial resulted in a jury verdict exonerating the county and awarding minimal damages against one defendant. The judgment was reversed on appeal because the jury's verdict was perverse and unsupported by the evidence. *See Slaubaugh v. Slaubaugh,* 466 N.W.2d 573 (N.D.1991). On remand, 30 of 50 potential jurors were removed for cause, and the trial court noted that over half of the remaining 20 had some connection with parties or witnesses in the case. Under those facts, the court found that there was an "aura" of inter-relatedness that made it impossible to impanel a fair and impartial jury in Pierce County. *Slaubaugh, supra,* 499 N.W.2d at 104. We affirmed the court's order changing venue.

Our affirmance of the order changing venue in *Slaubaugh* does not require that venue

also be changed in this case. *Slaubaugh* and this case represent the broad range of factual circumstances which may arise in jury selection, and in which the trial court is accorded discretion to assess the sentiment of the community through juror responses on voir dire. It is precisely these types of cases which demand the trial court's exercise of discretion, and require great deference on the part of appellate courts.

■ We will reverse a trial court's decision denying a motion to change venue only when the prejudice to the defendant is so palpable and clear from the record that it was unreasonable, arbitrary, or capricious for the court to conclude that a fair and impartial jury could be impaneled. *See State v. Norman, supra,* 507 N.W.2d at 526 (trial court's decision on change of venue will be reversed on appeal only for an abuse of discretion); *Bjorgen v. Kinsey,* 491 N.W.2d 389, 393 (N.D.1992) (trial court abuses its discretion when it acts in an arbitrary, capricious, or unreasonable manner). All other cases fall within the broad spectrum of the trial court's discretion. The trial court has personally heard the juror's responses on voir dire, and is able to draw the subtle inferences of prejudice and bias that elude the cold record. The trial court is also closer, chronologically and geographically, to any prejudicial pretrial media coverage, and is better able to contemporaneously assess its effect within the context of then-prevailing community attitudes.

We conclude that the trial court did not abuse its discretion in denying Austin's motions for change of venue.

## II. ADMISSION OF TAPED CONVERSATIONS

Austin asserts that the trial court erred in admitting into evidence three recorded conversations between Austin and Werner Kunkel.

Austin and Kunkel met at the penitentiary in 1985. Kunkel subsequently lived with Sandy Kjosa for five years, and the couple had two children. Sandy subsequently met and married Austin. At the time these re-

cordings were made, Kunkel's two children were living with Austin and Sandy.

■ The recordings were made on September 17 and 18, 1992, at Austin's place of employment. Kunkel, wearing a "wire," visited with Austin on three separate occasions. The first conversation lasted approximately one hour; the second, approximately 50 minutes; and the third, approximately 15 minutes. The conversations centered almost exclusively upon visitation difficulties regarding Kunkel's two children. During the course of these conversations, Kunkel expressed concern for the children's safety and, in a few instances, vaguely threatened Austin with physical harm if Austin used drugs in front of, or harmed, Kunkel's children. Kunkel also told Austin that he would seek court intervention if the visitation difficulties were not worked out.

Austin asserts that these taped conversations were inadmissible under Section 29-21-12.1, N.D.C.C.:

> "*Statements, admissions, or confessions procured by duress, fraud, threat, or promises inadmissible in any criminal action.* Any statement, admission, or confession procured from any person charged with crime in a state court, which was obtained by duress, fraud, threat, or promises, is not admissible in evidence against said person in any criminal action."

Austin asserts that we should give the statute its broadest possible reading: If a defendant has made a statement during a conversation in which the other party has used any conduct or language which could be construed to constitute duress, fraud, threat, or promise, all statements by the defendant during that conversation are inadmissible.

The statute, however, does not say that all statements made by a defendant are inadmissible if a threat, promise, duress, or fraud, unrelated to the prejudicial statements, occurred during the conversation. The statute, on its face, says "[a]ny statement, admission, or confession *procured* from any person ... which was *obtained by* duress, fraud, threat,

or promises" is inadmissible. The trial court, although concluding that Kunkel did make statements that "could be regarded as threats," held that those statements related solely to Kunkel's concern that Austin would use drugs in front of the children or hurt the children, and did not ."procure" or "obtain" Austin's statements regarding the Abernathy murders.

We agree with the trial court's rationale. The statute precludes admission of statements that are procured or obtained by threat. For the statute to apply, there must be some connection or nexus between the threatening comments and the defendant's statement. Because the alleged threats were wholly unrelated to Austin's statements, Section 29-21-12.1, N.D.C.C., does not preclude their admission.[1]

### III. JURY INSTRUCTION

Austin asserts that the trial court erred in giving the following "presumption of truthfulness" instruction:

> "If you find a conflict in the evidence you should reconcile it, if you can, because each witness is presumed to have told the truth."

The trial in this case was held in June and July of 1993, and judgment was entered on August 3, 1993. On August 10, 1993, we issued our opinion in *State v. Thompson,* 504 N.W.2d 838, 842 (N.D.1993), holding that it was error to give the "presumption of truthfulness" instruction in a criminal case. Austin argues that *Thompson* requires reversal of his conviction and a new trial.

■ Austin did not object to the instruction at trial. During voir dire, Austin's counsel stressed to potential jurors that all witnesses start out "on the same plane," that they are presumed truthful, and that the testimony of each witness should be given equal consideration. Austin therefore concedes that reversal is warranted only if the giving of the instruction constituted obvious error under Rule 52(b), N.D.R.Crim.P. *See State v. Frey,* 441 N.W.2d 668, 670 (N.D.

---

1. The State did not assert, and we need not address, the question whether Section 29-21-12.1, N.D.C.C., applies only to statements, admissions, or confessions made after the person has been charged with a crime.

1989). Our power to notice obvious error is exercised cautiously and only in exceptional circumstances where the defendant has suffered serious injustice. *State v. McNair*, 491 N.W.2d 397, 399 (N.D.1992).

■ Austin has not cited a single case or other authority to support his assertion that giving the "presumption of truthfulness" instruction constitutes obvious error. A growing number of federal and state courts have held that giving the instruction in the absence of an objection does not constitute obvious or plain error. *See, e.g., United States v. Arias–Villanueva*, 998 F.2d 1491, 1505 (9th Cir.), *cert. denied,* — U.S. —, —, 114 S.Ct. 359, 573, 126 L.Ed.2d 322, 472, 473 (1993); *United States v. Love*, 767 F.2d 1052, 1060 (4th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986); *United States v. Ramos Algarin*, 584 F.2d 562, 569 (1st Cir.1978); *United States v. LaRiche*, 549 F.2d 1088, 1093 (6th Cir.), *cert. denied,* 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 (1977); *United States v. Chrisco*, 493 F.2d 232, 238 (8th Cir.), *cert. denied,* 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974); *United States v. Gray*, 464 F.2d 632, 639 n. 4 (8th Cir.1972); *United States v. Safley*, 408 F.2d 603, 605 (4th Cir.), *cert. denied,* 395 U.S. 983, 89 S.Ct. 2147, 23 L.Ed.2d 772 (1969); *State v. Canaday*, 26 Ariz.App. 1, 2–3, 545 P.2d 963, 964–965 (1976); *Laster v. State*, 70 Md.App. 592, 521 A.2d 1289, 1292 (1987); *State v. Snide*, 151 Vt. 343, 560 A.2d 380, 381–382 (1989); *State v. Chambers*, 144 Vt. 377, 477 A.2d 974, 978 (1984).

■ Furthermore, as a matter of trial tactics, Austin's counsel repeatedly stressed to the jurors that all witnesses begin "on the same plane" and that the jurors should not give undue weight to testimony of law enforcement officers. By so doing, counsel effectively invited any error created by the "presumption of truthfulness" instruction. It is well settled that a criminal defendant cannot complain about errors invited upon the court. *State v. Robideaux*, 493 N.W.2d 210, 214 (N.D.1992); *State v. Frey, supra,* 441 N.W.2d at 671. The rule applies as well to obvious error invited as a result of tactical decisions made by counsel during trial. *See*

*State v. Thill*, 473 N.W.2d 451, 453 (N.D. 1991); *State v. Stoppleworth*, 442 N.W.2d 415, 416–417 (N.D.1989); *State v. Frey, supra,* 441 N.W.2d at 670–671; *State v. Thiel*, 411 N.W.2d 66, 71 (N.D.1987).

We conclude that giving the "presumption of truthfulness" instruction in this case did not constitute obvious error.

## IV. SUFFICIENCY OF THE EVIDENCE

Austin asserts that the evidence was insufficient to support his conviction. As a corollary, he asserts that Newnam's testimony was not sufficiently corroborated as required by Section 29–21–14, N.D.C.C., and that he cannot be convicted upon the uncorroborated testimony of an accomplice.

■ Appellate review of the sufficiency of the evidence to support a jury verdict is extremely limited. *State v. Pacheco*, 506 N.W.2d 408, 410 (N.D.1993). The defendant must show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt. *State v. Frey, supra,* 441 N.W.2d at 672. We will reverse a jury verdict for insufficient evidence only when no rational factfinder, after drawing all inferences in favor of the State and viewing all evidence in the light most favorable to the prosecution, could have found the defendant guilty beyond a reasonable doubt. *State v. Hafner*, 499 N.W.2d 596, 597 (N.D.1993). We do not reweigh the evidence or judge the credibility of witnesses; we must assume that the jury believed the evidence that supports the verdict and disbelieved any contrary evidence. *State v. Pacheco, supra,* 506 N.W.2d at 410.

■ There is sufficient evidence in the record to support the verdict against Austin. Calvin Newnam's testimony graphically detailed Austin's participation in the crimes. In addition, several witnesses testified that Austin had talked, prior to the killings, about plans to rob and kill an elderly couple living near his parents' home (the Abernathys lived about one mile from Austin's parents). Other testimony established that Austin was with Newnam from the early afternoon until 8:00 p.m. on the night of the murder, which

occurred between 7:00 and 8:00 p.m. It was undisputed that Austin had stolen the two handguns involved in the murder. A knife which had been taken from the Abernathy home and a cigarette lighter bearing the inscription "Austin" were found in a ditch near the Abernathy home, and Newnam testified Austin had thrown items out of the vehicle in that area while they drove from the murder scene. Evidence also showed that Austin had to forge a check the afternoon of the killings to buy food, but later that evening, he had cash to pay for a hotel room. Two witnesses also testified that Austin had admitted to them his participation in the killings.

Austin, in effect, is asking us to reweigh the evidence and reassess the credibility of the witnesses against him. That is not the function of an appellate court reviewing the evidence to support a jury verdict. *State v. Pacheco, supra,* 506 N.W.2d at 410. We conclude that the verdict is supported by the evidence.

█ In a related argument, Austin asserts that Newnam's testimony was not sufficiently corroborated as required by Section 29–21–14, N.D.C.C., which provides:

"*Testimony of accomplice—Corroboration required.* A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

We have explained the purpose and application of the statutory requirement:

"The purpose of the corroborating evidence is to show that accomplices are reliable witnesses and worthy of credit.... However, under Section 29–21–14 it is not necessary to corroborate every fact testified to by an accomplice.... All that is required is that the evidence, circumstantial or otherwise, corroborate the testimony of an accomplice as to some material fact or facts, and tends to connect the defendant with the commission of the crime.... It is not necessary that the corroborating evidence be sufficient, in it-self, to warrant a conviction or establish a prima facie case.... Furthermore, the State need not point to a single isolated fact which is sufficient corroboration, as it is the combined and cumulative weight of the evidence other than the testimony of the accomplice witness which satisfies the statute."

*State v. Haugen,* 448 N.W.2d 191, 194 (N.D. 1989) (citations omitted). *See also State v. Burgard,* 458 N.W.2d 274, 276–277 (N.D. 1990). If some evidence tends to connect the defendant to the crime, it is for the jury to weigh that corroborating evidence with the accomplice's testimony and all other evidence in the case to determine the guilt or innocence of the defendant. *State v. Hogie,* 454 N.W.2d 501, 504 (N.D.1990).

█ The evidence previously discussed tends to connect Austin with the crime and corroborates Newnam's testimony about several material facts. We particularly note the cigarette lighter bearing the inscription "Austin" found near the knife on the escape route identified by Newnam; Austin's theft in August 1984 of the handguns used in the murders; Austin's presence with Newnam before and after the murders; and Austin's incriminating statements to third parties both before and after the murders. When viewed cumulatively, this evidence strongly corroborates Newnam's testimony about Austin's involvement in the murders. We conclude that, pursuant to Section 29–21–14, N.D.C.C., there was sufficient corroborating evidence for Newnam's testimony.

The judgment of conviction is affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.